UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Brittany Williams., Plaintiff, -vs- South Carolina Department of Probation, Parole, and Pardon Services, Director Jake Gadsden, Jr. in his official capacity, Defendants. | C/A No.: 9:26-cv-5180-RMG-MHC COMPLAINT (Jury Trial Demanded) |

Plaintiff Brittany Williams, through counsel, alleges as follows:

## I. PARTIES, JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

1. Ms. Williams is an African American woman who resides in Bamberg County, South Carolina.

2. Defendant South Carolina Department of Probation, Parole and Pardon Services ("PPP") is a South Carolina state agency with a central office in Columbia, South Carolina. It employed Williams during the events alleged below and was the respondent named in her EEOC charge.

3. Defendant Jake Gadsden Jr. is sued solely in his official capacity as PPP's Director for prospective relief under the Americans with Disabilities Act ("ADA"), including reinstatement and prospective accommodation. No monetary relief is sought against this defendant under the ADA.

4. This action arises under Title VII of the Civil Rights Act of 1964 and Title I of the ADA. The Court has federal-question jurisdiction over these federal claims.

5. Venue is proper in the District of South Carolina: the employment occurred in South Carolina, including at PPP's Hampton County office, and PPP maintains its central office in Columbia.

6. On March 24, 2026, Williams signed a charge naming PPP and alleging race, color, disability, retaliation, and a racially hostile work environment arising from her employment and termination. She requested filing with both the EEOC and the state agency. Her charge described her complaints to supervisors, accommodation requests, training and testing, workplace harassment, and discharge.

7. On July 28, 2026, the EEOC issued a Determination and Notice of Rights dismissing charge no. 415-2026-01298 and notifying Williams of her right to sue PPP. Williams received the notice on July 28, 2026. This action is filed within 90 days of receipt of that notice, as required by 42 U.S.C. § 2000e-5.

## II. FACTUAL ALLEGATIONS

8. PPP hired Williams in October 2025 as an Offender Supervision Specialist II in its Hampton County office at an annual salary of nearly $40,000. Her duties included helping people following release from incarceration and communicating concerning their court-related needs.

9. Williams was the only Black employee in her office; her supervisors and coworkers were white.

10. Although she had not completed required training, PPP assigned Williams work involving sex offenders and violent individuals rather than limiting her work to standard offenders. She did not receive the relevant training until January 2026. When colleagues left her alone in the office, she handled offender communications and intake, including intake-related work concerning Juwann Eady.

11. White coworkers received timely training and were not assigned comparable work without training. PPP also kept Williams at orange progress status despite her performance while white peers received green status, adversely affecting her opportunities and reputation.

12. Williams's coworkers made racially charged comments about her skin color, belittled her, and excluded her from lunches and other workplace interactions. They also made light of her mother's death.

13. Williams repeatedly complained orally about racial mistreatment to Regional Director Chad Beard and supervisor Pryor Jackson. Her complaints were ignored. When Agent-in-Charge Nicole Meyers returned from leave, she instructed Williams to report such matters only to her; Meyers also failed to remedy the conduct.

14. Williams has had Severe Anxiety Disorder since young adulthood and disclosed it to PPP when hired. Her mother died in December 2025; the loss and workplace harassment aggravated her anxiety.

15. Williams requested bereavement leave and accommodation for the effects of her mother's death on her mental health. PPP gave her three days of leave, refused additional time and accommodation, and Beard directed her to return by December 22, 2025. White employees confronting comparable family emergencies received additional leave and support. PPP did not tell Williams that additional unpaid leave was available when she requested it.

16. In January 2026, Williams had to take CPR and PPP Basic examinations. She requested accommodations for the examinations because of her anxiety and the trauma surrounding her mother's death, but PPP denied her requests. White peers facing comparable circumstances received extra time and support.

17. The testing brought back traumatic memories of watching her mother die, causing Williams to freeze; she failed the Basic examination and then failed a second attempt. After the second failure, a doctor told her she remained in shock and that the test subject matter was triggering PTSD symptoms. She communicated this information to her supervisors but received no additional assistance or accommodation.

18. Williams's anxiety and trauma-related symptoms impaired her ability to concentrate during testing and training. With reasonable accommodation, including appropriate adjustments to testing or training and disability-related leave, she could perform the essential functions of the position and complete its requirements.

19. Williams registered for an online mental-health COMPAS training session in February 2026. Her registration was changed to in-person training without her authorization. Jackson called and shouted at her for not attending in person, despite Williams's explanation that she had registered for the webinar.

20. Early in February 2026, supervisors met with the training director concerning Williams's Basic examination and COMPAS training. Williams asked to attend and explain what had happened but was not allowed to do so; white coworkers were allowed to attend meetings about their performance.

21. PPP later characterized absences on November 4, 2025, January 20 and 21, 2026, and February 4, 2026, as attendance or training failures. Williams had informed Meyers of her illness on November 4 and had notified supervisors and obtained Meyers's permission for the January 20 and 21 absences. Williams did not consent to the change in COMPAS registration underlying the February 4 dispute.

22. On February 17, 2026, PPP terminated Williams. Its termination letter gave no specific reason for separation and referred instead to her one-year probationary status.

23. PPP later maintained that Williams was discharged for examination results, training attendance, and performance issues, and denied that she had complained about discrimination, disclosed a disability, or sought accommodation. Williams had made the complaints and requests alleged above.

24. Williams was terminated shortly after her complaints of racial mistreatment and her requests for disability-related assistance, following denials of requested accommodations and a disputed account of her attendance and training.

25. As a result, Williams lost her income and career opportunities and suffered humiliation, emotional distress, and medical harm.

## III. CLAIMS FOR RELIEF

Count I — Title VII Race and Color Discrimination (PPP)

26. Williams incorporates paragraphs 1–25.

27. PPP treated Williams less favorably because of her race and color in training, work assignments, progress status, leave and testing opportunities, access to performance discussions, and termination.

28. PPP's actions altered Williams's terms and conditions of employment and culminated in her discharge in violation of Title VII. She seeks relief available against PPP for that discrimination.

Count II — Title VII Racially Hostile Work Environment (PPP)

29. Williams incorporates paragraphs 1–25.

30. Coworkers repeatedly made racially charged remarks, belittled Williams about her skin color, and excluded her from ordinary workplace interactions. Williams reported the mistreatment to supervisory personnel, but it continued.

31. This unwelcome race-based treatment was severe or pervasive enough to alter the conditions of Williams's employment and create an abusive work environment. PPP knew of the treatment through her complaints and failed to stop it.

Count III — Title VII Retaliation (PPP)

32. Williams incorporates paragraphs 1–25.

33. Williams repeatedly opposed racial discrimination and harassment in oral reports to Beard, Jackson, and Meyers.

34. After those complaints, PPP continued the challenged treatment and terminated Williams on February 17, 2026. The complaints were a motivating cause of her discharge, in violation of Title VII.

Count IV — ADA Disability Discrimination and Failure to Accommodate (Director, Official Capacity; Prospective Relief Only)

35. Williams incorporates paragraphs 1–25.

36. Williams had an anxiety disorder, aggravated by trauma-related symptoms, that substantially limited her concentration during testing and training. PPP knew of her anxiety diagnosis and requests for accommodation, and her supervisors later learned of her doctor's assessment of her trauma-related symptoms.

37. Williams could perform the essential functions of her position with reasonable accommodation. PPP denied disability-related requests for additional leave and testing assistance, did not provide effective accommodation, and relied on the resulting examination difficulties in discharging her. These actions violated 42 U.S.C. § 12112.

38. Williams seeks prospective reinstatement and, upon reinstatement, reasonable accommodation against the Director in his official capacity, not damages under this count. *See Board of Trustees, University of Alabama v. Garrett*, 531 U.S. 356 (2001).

Count V — ADA Retaliation (Director, Official Capacity; Prospective Relief Only)

39. Williams incorporates paragraphs 1–25.

40. Williams requested disability-related leave, testing accommodations, and support from PPP before her discharge.

41. PPP discharged Williams shortly after those requests. Her requests were a motivating cause of her discharge. Williams seeks prospective reinstatement against the Director in his official capacity under this count, not monetary relief.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in her favor and against Defendants, and award the following relief:

A. A declaration that the challenged conduct violated Title VII and the ADA, to the extent such relief is available against the respective defendants;

B. Reinstatement to her position, with appropriate prospective accommodation, or, under Title VII if reinstatement is impracticable, front pay;

C. Back pay, lost benefits, and other equitable make-whole relief against PPP under Title VII;

D. Compensatory damages against PPP under Title VII, in an amount determined at trial and subject to applicable statutory limits;

E. Prejudgment and postjudgment interest as permitted by law;

F. Reasonable attorney's fees, costs, and expenses as permitted by law; and

G. Other appropriate legal and equitable relief consistent with the claims and limits stated above.

## V. JURY DEMAND

Williams demands trial by jury on all issues triable of right by jury.

Respectfully submitted,

By: s/Aaron Wallace___________
Aaron Wallace, Esq (100255)
Wallace Law Firm
1416 Laurel Street, STE B
Columbia, SC 29201
PH: 803-766-3997
Fax: 839-218-5786

Columbia, South Carolina

October 26, 2026